1
2
3
4

**ELLIOT LAW OFFICE, PC**
DAVID ELLIOT (270381)
2028 3rd Avenue
San Diego, CA  92101
davidelliot@elliotfirm.com
Tel: (619) 468-4865

5

*Attorney for Plaintiffs and the Proposed Class*

6

7
8

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

9
10

Case No:

11
12

CLASS ACTION COMPLAINT FOR
VIOLATIONS OF:

13
14
15

LISA BOSS, LINDA GUNNETT,
AND PEGGY TATUM on behalf of
themselves and all others similarly
situated,

16

Plaintiffs,

17

v.

18

19
20

THE KRAFT HEINZ COMPANY,
KRAFT HEINZ FOODS COMPANY
(LLC)

21

Defendants.

22
23
24

1. ILLINOIS CONSUMER FRAUD AND DECEPTIVE
BUSINESS PRACTICES ACT, 815 ILCS 505/1
2. CONSUMERS LEGAL REMEDIES ACT, CAL. CIV.
CODE  §§1750
3. UNFAIR COMPETITION LAW, UNLAWFUL
PRONG,  CAL. BUS. & PROF. CODE §§17200
4. UNFAIR COMPETITION LAW, UNFAIR PRONG,
CAL. BUS. & PROF. CODE §§17200
5. FALSE ADVERTISING LAW, CAL. BUS. & PROF.
CODE §§ 17500
6. PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW, 73 PA. STAT.
ANN.  § 201
7. BREACH OF EXPRESS WARRANTY
8. BREACH OF IMPLIED WARRANTY
9. NEGLIGENT MISREPRESENTATION
10. FRAUD BY OMISSION

25

**DEMAND FOR JURY TRIAL**

26
27
28

TABLE OF CONTENTS

I. JURISDICTION AND VENUE ................................................................................................ 1

II. NATURE OF THE ACTION ................................................................................................... 2

III. PARTIES .............................................................................................................................. 3

IV.FACTUAL ALLEGATIONS ................................................................................................. 4

1. Defendants Do Not Disclose That Their Products Are Artificially Flavored. ............... 4

2. Federal and State Law Require Defendants to Disclose the Artificial Flavor in
the Products. ...................................................................................................................... 8

3. Defendants' Competitors Label Their Products Lawfully. .......................................... 12

4. Plaintiffs and the Class Pay a Price Premium for Defendants' Misbranded
Products. .......................................................................................................................... 13

V. DELAYED DISCOVERY .................................................................................................... 15

VI. CLASS ACTION ALLEGATIONS .................................................................................... 15

VII. CAUSES OF ACTION ...................................................................................................... 19

FIRST CAUSE OF ACTION: Violations of Illinois Consumer Fraud and
Deceptive Business Practices Act ................................................................................... 19

SECOND CAUSE OF ACTION: Violation of the Consumers Legal Remedies Act
(CLRA), Cal. Civ. Code §§ 1750, et seq. (on behalf of the California Sub-Class) .......... 20

THIRD CAUSE OF ACTION Violation of the Unfair Competition Law (UCL),
Unlawful Prong, Cal. Bus. & Prof. Code §§ 17200, et seq. (on behalf of the
California Sub-Class) ....................................................................................................... 21

FOURTH CAUSE OF ACTION: Violations of the Unfair Competition Law
(UCL), Unfair Prong, Cal. Bus. & Prof. Code §§ 17200, et seq. (on behalf of the
California Sub-Class) ....................................................................................................... 22

FIFTH CAUSE OF ACTION: Violations of California's False Advertising Law
Cal. Bus. & Prof. Code §§ 17500, et seq. (on behalf of the California Sub-class) .......... 25

SIXTH CAUSE OF ACTION: Pennsylvania Unfair Trade Practices and
Consumer Protection Law ............................................................................................... 26

SEVENTH CAUSE OF ACTION: Breach of Express Warranties
(on behalf of the California Sub-Class and states with substantially similar laws) .......... 28

EIGHTH CAUSE OF ACTION: Breach of Implied Warranties
(on behalf of the California Sub-Class and states with substantially similar laws) .......... 29

i

NINTH CAUSE OF ACTION: Negligent Misrepresentation, Cal. Civ. Code §§ 1709-1710 and the common law of all states (on behalf of the Nationwide Class and the California Sub-Class) .................................................................................31

TENTH CAUSE OF ACTION: Fraud by Omission ........................................33

VIII. PRAYER FOR RELIEF..............................................................................34

IX. JURY DEMAND ............................................................................................35

CLASS ACTION COMPLAINT

Plaintiffs Lisa Boss, Linda Gunnett, and Peggy Tatum ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel, hereby bring this action against The Kraft Heinz Company ("Kraft Heinz") and Kraft Heinz Foods Company LLC ("Kraft Heinz Foods,") (collectively, "Defendants"), and upon information and belief and investigation of counsel, allege as follows:

## I.    <u>JURISDICTION AND VENUE</u>

1.    Plaintiffs bring this proposed class action in this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005).

2.    This Court has subject matter jurisdiction over this proposed class action under CAFA, 28 U.S. Code § 1332(d), which provides the federal courts with original jurisdiction over any class action in which any member of the plaintiff class is a citizen of a state different from any defendant and the matter in controversy exceeds $5 million in the aggregate, exclusive of interest and costs.

3.    Minimal diversity as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A) is satisfied as Plaintiffs as well as other members of the proposed class are citizens of states other than Illinois and Defendants are citizens of Illinois.

4.    The jurisdictional amount in controversy is satisfied. Plaintiffs allege on information and belief that the total claims of the members of the proposed Class in this action exceed $5 million in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

5.    This matter is not a "local controversy" pursuant to 28 U.S.C. § 1332(d)(5)(B). Plaintiffs allege on information and belief that more than two-thirds of the members of the proposed Class are citizens of states other than Illinois and that the proposed Class contains more than 100 persons.

6.    This Court has both general and specific personal jurisdiction over the Defendants.

CLASS ACTION COMPLAINT

7. This Court has personal jurisdiction over Defendants because they have affirmatively established and maintained contacts with the State of Illinois ("State") and are registered to do business in Illinois.

8. This court has general personal jurisdiction over Defendants because they maintain corporate headquarters in Chicago, Illinois, and are otherwise at home in the State.

9. This Court further has specific personal jurisdiction arising from Defendants' decisions to market, distribute, and sell the products that are the subject of this action in Illinois.

10. Defendants have sufficient minimum contacts with this State and sufficiently avail themselves of the markets and legal protections of this State through promotion, sales, and marketing of the Products within the State to render the exercise of jurisdiction by this Court reasonable and fair.

11. Venue is proper in this County and this judicial district pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendants conduct extensive business in this district, Defendants made decisions and took actions in this district that give rise to Plaintiffs' causes of action, and because Defendants maintain corporate headquarters in this district.

## II. NATURE OF THE ACTION

11. This is a national consumer class action for the violation of state consumer protection, unfair competition, and false advertising statutes, and for common-law breach of warranty, negligent misrepresentation, and fraud by omission.

12. Defendants manufacture, label, distribute, advertise, and sell "water enhancer" water-flavoring products packaged under the trade name, "MiO."

13. These Products are labeled as if they contain solely natural flavors.

14. The Products however, contain undisclosed artificial flavoring.

15. Federal and state law require any food or beverage product that contains any artificial flavor to prominently disclose this fact on the product's front- and back-labels.

CLASS ACTION COMPLAINT

16. The Products' labels omit all of the required disclosures.

17. Because these labels conceal the fact that the Products are made with artificial flavors, those labels are false and misleading.

18. The Products are misbranded under Federal and state law and therefore unlawful to sell in the United States.

19. Defendants willfully conceal from consumers the fact that these Products contain artificial flavoring chemicals that simulate the Products' claimed natural flavors.

20. Defendants' packaging, labeling, and advertising scheme for these Products is intended to give consumers the false impression that they are buying a premium all-natural product instead of a product that is artificially flavored.

21. Plaintiffs, who purchased the Products multiple times and were deceived by Defendants' unlawful conduct, bring this action on their own behalf and on behalf of consumers nationwide to remedy Defendants' unlawful acts.

22. On behalf of the Class as defined herein, Plaintiffs seek an order compelling Defendants to, *inter alia*: (1) cease packaging, distributing, advertising, and selling the Products in violation of U.S. FDA regulations and state consumer protection laws; (2) inform consumers regarding the Products' misbranding; (3) award Plaintiffs and the other Class members restitution, actual damages, statutory damages, and punitive damages; and (4) pay all costs of suit, expenses, and attorney fees.

### III.   PARTIES

23. Defendant The Kraft Heinz Company is incorporated in Delaware.

24. Kraft Heinz states in federal court filings that the corporation is co-headquartered in Illinois and Pennsylvania.

25. Kraft Heinz maintains headquarters at 200 E. Randolph Street, Chicago, IL.

26. Kraft Heinz maintains a second headquarters at One PPG Place, Pittsburgh, Pennsylvania.

27. Defendant Kraft Heinz Foods is a subsidiary of Defendant Kraft Heinz.

28. Kraft Heinz Foods is incorporated in Delaware.

29.     Kraft Heinz Foods states on the Product labels that its corporate headquarters is in Chicago, Illinois.

30.     Kraft Heinz Foods maintains headquarters at 200 E. Randolph Street, Chicago, Illinois.

31.     Kraft Heinz Foods is registered with the Illinois Secretary of State under registration number 06356486.

32.     Defendants manufacture, label, advertise, market, distribute, and sell the Products in Illinois, California, Pennsylvania, and throughout the United States.

33.     Plaintiff Lisa Boss is a resident and citizen of California and purchased the Products multiple times in Tulare County, California, for personal and household consumption.

34.     Plaintiff Linda Gunnett is a resident and citizen of California, who purchased the Products multiple times in Riverside County, California, for personal and household consumption.

35.     Plaintiff Peggy Tatum is a resident and citizen of California and purchased the products multiple times in Contra Costa County, California, for personal and household consumption.

## IV.     FACTUAL ALLEGATIONS

### 1. Defendants Do Not Disclose That Their Products Are Artificially Flavored.

36.     At least eighteen of Defendants' MiO flavored water enhancers (the "Products") contain an undisclosed artificial flavor.

37.     Artificial dl-malic acid, a synthetic petrochemical, is in fact the primary flavoring agent in the Products.

38.     Sixteen of the eighteen Products list malic acid as either the first or second ingredient by weight after water.

39.     All of the Products' front labels display the name of each Product's

CLASS ACTION COMPLAINT

characterizing fruit or berry or "tea" flavor.[2]

40.    These label representations convey to the consumer by operation of federal and state law that the Products are made exclusively from and flavored only with natural fruits and berries or fruit and berry flavors.

41.    None of the Products or Products' packaging includes on either the front or back label any indication that any of the Products contains artificial flavoring chemicals.

42.    The Products contain artificial flavoring chemicals.

43.    The Products are made with a synthetic chemical flavoring ingredient identified in the product ingredient list as "malic acid".

44.    The "malic acid" that Defendants put in the Products is not a natural flavoring but is instead a synthetic flavoring chemical manufactured in a petrochemical factory from petroleum feedstocks.

45.    Because the Products contain added artificial flavoring ingredients that simulate and reinforce the Products' characterizing fruit and berry flavors, the Products' front labels are required by law to disclose the presence of those additional flavorings rather than deceptively claim that the flavor is conferred only by natural flavorings.

46.    All of the Products' labeling omits the Federal and state-required "Artificial Flavor" or "Artificially Flavored" label statement.

47.    Front label images for representative Products are shown below for "Cherry Blackberry," "Acai Berry Storm," and "Fruit Punch" flavors of the "MiO" and "MiO Energy" labeled Products.

---

[2] The eighteen Products include:  Acai Berry Storm, Artic Grape, Berry Blast, Berry Grape, Berry Pomegranate, Blackberry Raspberry, Cherry Blackberry, Cranberry Raspberry, Fruit Punch, Mango Peach, Orange Vanilla, Orchard Apple, Strawberry Orange, Strawberry Pineapple Smash, Strawberry Watermelon, Sweet Tea, Tropical Cherry, and Tropical Fusion.

CLASS ACTION COMPLAINT





48.     The Products' labels fail to disclose that the Products contain artificial flavor.

49.     Defendants sell the Products individually and in multi-product packs.

50.     The front of the 4-bottle variety pack, shown below, also provides no indication that any of the packaged Products contain artificial flavors, even though the "Fruit Punch" and "Sweet Tea" products contain artificial flavors.



51.     The front of the 12-pack of Strawberry Watermelon, shown below, also provides no indication that the Product contains artificial flavors even though the Product does in fact contain artificial flavors.



52.     Representative back label images for three of the Products are provided below for the "Fruit Punch," "Berry Blast," and "Sweet Tea" flavors.

6




53.     The "malic acid" shown on the Products' ingredient lists is the artificial flavoring ingredient dl-malic acid.

54.     None of the Products' ingredient lists, as shown on the back labels, identify the presence of this artificial flavoring even though such disclosure is required by law.

55.     Under Federal and state law, the product ingredient list is also required to disclose the presence of artificial flavorings.

56.     The Products' ingredient lists also fail to identify the "malic acid" in the Products as an artificial flavor.

57.     Neither the individual Products' labels nor the Products' variety pack labels include any of the required artificial-flavor disclosures.

58.     The malic acid Defendants added to the Products is a synthetic manufactured petrochemical called dl-malic acid.[3]

59.     The dl-malic acid added to the Products is a petrochemical that is synthesized from benzene or butane. It does not occur in nature.

60.     None of the Products' labeling informs the consumer, as required by federal and state law, that the Products contain this artificial flavor.

61.     Federal and state consumer protection laws require all food products that contain artificial flavor to disclose this fact to consumers prominently on both the front and back labels.

---

[3] D-malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

7

62. Defendants fail to do so, unlawfully misleading consumers to believe that all these Products are naturally flavored when in fact they contain artificial flavoring.

63. Defendants are sophisticated manufacturers, marketers, and distributors of foods and beverages.

64. Food-ingredient suppliers offer manufacturers both the natural and artificial versions of the flavoring ingredient malic acid.

65. Defendants chose to purchase the artificial version of malic acid, not the natural, but label the Products as if they contained the natural compound instead.

66. Defendants, as sophisticated actors in the food and beverage industry, made a conscious choice not to label the Products in accordance with federal and state statutory and common law requirements.

67. Defendants knew or should have known that the Products are mislabeled and misbranded and violate Federal and state consumer protection laws.

68. Defendants willfully conceal from consumers, through Product misbranding and misleading advertising, the fact that the Products are artificially flavored.

**2. Federal and State Law Require Defendants to Disclose the Artificial Flavor in the Products.**

69. An artificial flavor is "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 CFR 101.22(a)(1).

70. The dl-malic acid that Defendants put in these Products is derived from petrochemicals, not from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material. . . ."

71. The dl-malic acid in the Products provides the characterizing tart flavor of the fruits and berries listed on the Products' front labels.

72. The "malic acid" that Defendants put in the Products is therefore an artificial

CLASS ACTION COMPLAINT

flavor under federal and state law.[4]

73.     Because it contains an artificial flavor, federal and state laws require the Products to display both front- and back-label disclosures to inform consumers that they are artificially flavored.

74.     The Products' labeling shows none of the required disclosures.

75.     The Products therefore violate federal and state consumer protection laws.

76.     U.S. Food, Drug, and Cosmetic Act regulations require that a food's label accurately describe the food product, its characterizing flavors, and all ingredients. *See*, 21 C.F.R. 102.5(a).

77.     Under federal law, any recognizable primary flavor identified on the front label of a food Product is referred to as a "characterizing flavor."

78.     Federal regulations hold that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor". *See* 21 C.F.R. 101.22(i).

79.     Each of the fruits and berries listed on the Products' front-labels are primary recognizable flavors and are therefore by law considered characterizing flavors.

80.     If a product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product contains either natural or artificial flavorings or both.

81.     If any artificial flavor "simulates, resembles or reinforces" the characterizing flavor in the product, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i) (3), (4).

---

[4] Both the natural form and the artificial form of malic acid are considered "GRAS" – Generally Regarded as Safe – under U.S. food labeling laws. The artificial form, dl-malic acid, however, has not been extensively tested for safety in food.

CLASS ACTION COMPLAINT

82.     Federal regulations at 21 C.F.R. 101.22(c) require all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

83.     A food product's label must also include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

84.     Such statement must be in clearly noticeable print on the front display panel and of sufficient size for an average consumer to notice.

85.     The Products' labels do not include any of the required label statements.

86.     The Products' labels therefore violate federal, California, Illinois and Pennsylvania state laws as well as similar laws of other states.

87.     California law prohibits corporations and other entities from making untrue or misleading statements about goods, engaging in unethical practices injurious to California residents or competing corporations and other entities, and from violating FDA and other federal regulations and the laws of other states regarding consumer protections.

88.     California's Sherman law also incorporates by reference all of the federal FDA labeling regulations so that any food product that is in violation of FDA regulations also violates California state law.

89.     Illinois law prohibits businesses from engaging in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce to include making unlawful the employment of deception, misrepresentation, and the concealment, suppression, or omission of material facts.

90.     The Illinois Food Drug and Cosmetic Act (410 ILCS 620/11) also requires

CLASS ACTION COMPLAINT

Defendants to place on the Products' labels a notice to inform consumers that the Products contain artificial flavoring.

91.     Pennsylvania law prohibits businesses from engaging in unfair methods of competition and unfair or deceptive practices in trade or commerce, including any representations that goods have ingredients, characteristics, benefits, or qualities they do not have and deceptive conduct likely to create confusion to the detriment of consumers.

92.     Defendants were therefore required under all these states' laws to place prominently on the Products' front labels a notice sufficient to allow consumers to understand that the Products contain artificial flavorings.

93.     Defendants failed to disclose in the Product labels that the Products contain artificial flavors.

94.     Defendants failed to accurately label the Products, deceiving consumers and at a minimum violating federal law, rendering the Products misbranded and illegal to sell, as well as the state laws of California, Illinois, and Pennsylvania.

95.     Other states' laws similarly require that food product labels must disclose the presence of artificial flavoring and be accurate and complete and not misleading.

96.     The Products are therefore misbranded and illegal to distribute or sell in commerce in California, Illinois, Pennsylvania, and anywhere in the U.S.

97.     Plaintiffs and proposed Class members were unaware that the Products contained artificial flavors when they purchased them.

98.     When purchasing the Products, Plaintiffs were seeking products of particular qualities, specifically products that were flavored only with the natural ingredients claimed on the labels and that did not contain artificial flavors.

99.     Plaintiffs are not alone in these consumer preferences. Forbes Magazine reported that 88% of consumers polled indicated they would pay more for foods perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to Baby

CLASS ACTION COMPLAINT

Boomers—say they would pay more" for such products, specifically including foods with no artificial flavors.[5]

100.  Plaintiffs lost money as a result of Defendants' conduct because they purchased Products that contained undisclosed and undesirable artificial flavors at a price premium.

101.  Defendants' marketing of the Products reflects this knowledge of consumers' preference for natural products – not by manufacturing the Products only with natural ingredients but rather by concealing the fact that the Products contain artificial flavoring chemicals.

### 3. Defendants' Competitors Label Their Products Lawfully.

102.  Defendants not only deceive consumers but also gain an unfair commercial advantage in the marketplace by labeling the Products deceptively.

103.  Other manufacturers of competing beverage and water enhancer products label their products lawfully.

104.  Other manufacturers of artificially-flavored fruit and berry-flavored drinks and water enhancer products, for example, accurately and lawfully label their products as "Artificially Flavored."

105.  Other competing manufacturers, offering products whose labels suggest as Defendants do that their products are naturally flavored, truly make their products only with natural ingredients.

106.  Defendants, however, conceal the use of artificial flavoring, thus deceiving consumers, illegally cutting costs and increasing profits, and competing unfairly and unlawfully in the marketplace.

107.  Defendants' conduct injures competing manufacturers that do not engage in

---

[5] "Consumers Want Healthy Foods--And Will Pay More For Them"; Forbes Magazine, February 15, 2015. https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5; last visited November 3, 2021.

CLASS ACTION COMPLAINT

the same illegal behavior. Those manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars.

108.   Defendants' competitors market their products so as to compete lawfully. Kraft Heinz and Kraft Heinz Foods do not.

**4. Plaintiffs and the Class Pay a Price Premium for Defendants' Misbranded Products.**

109.   Plaintiffs purchased the Products in California during the Class Period as defined herein.

110.   Plaintiff Peggy Tatum purchased the Products about two times per month from about 2016 until October 2021 at Walmart and Target stores located in or near Brentwood, California.

111.   Plaintiff Lisa Boss purchased the Products one to two times per month from about 2018 until Oct 2021 at various locations in California, most recently at a Walmart warehouse store located at or near 3750 S. Mooney Boulevard, Visalia, CA 93277.

112.   Plaintiff Linda Gunnett purchased the Products about once per month from about 2019 until Oct 2021 from retailers in Riverside County including Ralphs, Walmart, and Vons.

113.   Plaintiffs purchased the Products at the marked retail prices, individually and in variety packs, ranging from $2.75 to $4.99 per unit, and from time to time at other promotional prices.

114.   Plaintiffs first discovered Defendants' unlawful conduct described herein in 2021, when they learned that the Products' characterizing flavors were deceptively simulated using artificial flavoring even though Defendants failed to disclose that fact on the Products' labels.

115.   Plaintiffs were deceived by and relied upon the Products' deceptive labeling, and specifically Defendants' omission of the fact that the Products contained artificial flavorings. Plaintiffs purchased the Products believing they were naturally flavored, based on the Products' deceptive labeling and failure to disclose the artificially flavoring.

116.   Plaintiffs, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, to scrutinize the back of the label to discover that the Products' front label are false and misleading, or to independently research information that state law and federal regulations require be displayed prominently on the front.

117.   Defendants, but not Plaintiffs, knew or should have known that the Products' labeling was false and in violation of federal regulations and state laws.

118.   Because Plaintiffs reasonably assumed the Products to be free of artificial flavoring based on the Products' labels and advertising, when they were not, they did not receive the full benefit of their purchases. Instead of receiving the benefit of products free of artificial flavoring, Plaintiffs received Products that were unlawfully labeled to deceive consumers into believing that they were exclusively naturally flavored and contained no artificial flavoring, in violation of federal and state labeling laws and regulations.

119.   Plaintiffs and the Class would not have purchased the Products in the absence of Defendants' misrepresentations and omissions. Had Defendants not violated state and federal law, Plaintiffs and the Class would not have been injured.

120.   Products that consumers believe to be naturally flavored sell at a price premium compared to products that contain artificial flavors.

121.   Both Plaintiffs and the Class members would not have purchased the Products or would not have paid as much for the Products absent Defendants' false and misleading statements and omissions.

122.   The Products were therefore worth less to Plaintiffs and other Class members than they paid for them.

123.   Defendants' unlawful and deceptive labeling practices and knowing and willful omissions caused Plaintiffs and the Class to lose money. Plaintiffs, and each Class member, altered their financial positions to their detriment and suffered losses equal to the price premium they paid.

124. Plaintiffs intend to, desire to, and will purchase the Products again when they can do so with the assurance that the Products' labels, which warrant that the Products are solely naturally flavored, are lawful and consistent with the Products' ingredients.

## V. **DELAYED DISCOVERY**

125. Plaintiffs did not discover that Defendants' labeling of the Products was false and misleading until 2021 when they learned the Products contained undisclosed artificial flavoring.

126. Plaintiffs are reasonably diligent consumers who exercised reasonable diligence in their purchases and consumption of the Products. Nevertheless, they would not have been able to discover Defendants' deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendants' labeling practices and non-disclosures—in particular, misnaming and failing to correctly identify the artificial flavors in the ingredient list, or to disclose that the Products contained artificial flavoring, or to accurately identify the kind of malic acid that Defendants put in the Products, impeded Plaintiffs' and the Class members' abilities to discover the deceptive and unlawful labeling of the Products throughout the Class Period.

127. Because Defendants actively concealed the illegal conduct, preventing Plaintiffs and the Class from discovering the violations of state and federal law, Plaintiffs and the Class are entitled to delayed discovery and an extended Class Period tolling the applicable statute of limitations.

## VI. **CLASS ACTION ALLEGATIONS**

128. Plaintiffs bring this action on behalf of themselves, and all others similarly situated (the "Class") pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

129. The Class is defined as follows:

> All U.S. citizens who purchased the Products in the United States on or after January 1, 2014 and until the date the Class is certified by the Court,

15

excluding Defendants and Defendants' officers, directors, employees, agents, and affiliates, and the Court and its staff.

130. The Plaintiffs also represent a proposed California Sub-Class.

131. The proposed California Sub-Class is defined as follows:

All California residents who purchased the Products in California on or after January 1, 2014 and until the date the Sub-Class is certified by the Court, excluding Defendants and Defendants' officers, directors, employees, agents, and affiliates, and the Court and its staff.

132. During the Class Period, the Products unlawfully contained the undisclosed artificial flavor dl-malic acid and were otherwise improperly labeled. Defendants failed to label the Products to disclose the presence of artificial flavorings as required by federal and state law.

133. During the Class Period, Class members purchased one or more of the Products and incurred the same injuries as alleged herein for the Plaintiffs.

134. The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation; there is a well-defined community of interest in questions of law and fact common to the Class.

135. The proposed Class satisfies numerosity. Defendants distribute the products through numerous retailers such as Walmart, Walgreens, Ralphs, Vons, Safeway, WinCo, Albertsons, Target, Rite Aid, Amazon, and Instacart; the Class numbers at least in the tens of thousands of consumers. Individual joinder of the Class members in this action is impractical. Addressing the Class members' claims through this class action will benefit Class members, the parties, and the courts.

136. The proposed Class satisfies typicality. Plaintiffs' claims are typical of and are not antagonistic to the claims of other Class members. Plaintiffs and the Class members all purchased the Products, were deceived by the false and deceptive labeling, and lost money as a result.

137. The proposed Class satisfies superiority. A class action is superior to any

CLASS ACTION COMPLAINT

other means for adjudication of the Class members' claims because each Class member's claim is modest, based on the Products' retail purchase price which is generally under $5.00. It would be impractical for individual Class members to bring individual lawsuits to vindicate their claims. If this action is not brought as a class action, Defendant can continue to deceive consumers, unfairly compete with other companies, and violate federal and state law with impunity.

138. Because Defendants made misrepresentations on the label of the Products themselves, all Class members including Plaintiffs were exposed to and continue to be exposed to the omissions and affirmative misrepresentations.

139. The proposed Class representatives satisfy adequacy of representation. The Plaintiffs are adequate representatives of the Class as they seek relief for the Class, their interests do not conflict with the interests of the Class members, and they have no interests incompatible with those of other Class members. Plaintiffs have retained counsel competent in the prosecution of consumer fraud and class action litigation.

140. There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class members in this action.

141. Questions of law and fact common to Plaintiffs and the Class include:

a. Whether Defendants failed to disclose the presence of an artificial flavoring ingredient in the Products;

b. Whether Defendants violated U.S. Food and Drug Administration labeling regulations and corresponding state law;

c. Whether Defendants' labeling omissions and representations constituted false advertising under state and federal law;

d. Whether Defendants' conduct constituted violations of California's Consumers Legal Remedies Act, Cal. Civ. Code §§1750 *et seq*.

e. Whether Defendants' conduct constituted violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, *et seq*.

17

f. Whether Defendants' conduct constituted violations of California's False Advertising law, Cal. Bus. & Prof. Code §§ 17500, *et seq*.

g. Whether Defendants' conduct constituted a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*.

h. Whether Defendants' conduct constituted a violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 209, *et seq*.

i. Whether Defendants' conduct constituted a violation of other states' consumer protection statutes;

j. Whether Defendants' conduct constituted a violation of state common-law consumer protection and unfair competition statutes;

k. Whether Defendants' advertising and label statements describing natural fruit and berry flavors were an affirmative representation of the Products' composition creating an express warranty;

l. Whether Defendants' conduct constitutes a breach of implied warranties under state statutes and common law;

m. Whether Defendants' conduct constitutes negligent misrepresentation;

n. Whether Defendants' conduct constitutes fraud by omission;

o. Whether the statute of limitations should be tolled on behalf of the Class due to Defendants' deceptive conduct in concealing the presence of artificial flavoring ingredients in the Products;

p. Whether Plaintiffs and the Class are entitled to restitution, rescission, actual damages, punitive damages, attorneys' fees and costs of suit, and injunctive relief; and

q. Whether Plaintiffs and the Class are entitled to any such further

18

1    relief as the Court deems appropriate.

2    142.   Class members lost money as a result of Defendants' unlawful behavior.

3    143.   Class members altered their financial positions to their detriment and suffered

4    individual loss in an amount equal to the price or the price premium they paid for the

5    Products as falsely labeled and advertised.

6    144.   Further, Defendants have acted on grounds applicable to the entire Class,

7    making final injunctive relief or declaratory relief appropriate for the Class as a whole.

8    145.   Class treatment is therefore appropriate for this Action.

9                        **VII.    CAUSES OF ACTION**

10                        **FIRST CAUSE OF ACTION:**

11   **Violations of Illinois Consumer Fraud and Deceptive Business Practices Act**

12                        **815 ILCS § 505/1,2**

13   147.   Plaintiffs re-allege and incorporate by reference the allegations made

14   elsewhere in the Complaint as if set forth in full herein.

15   148.   Defendants' conduct violated the Illinois Consumer Fraud and Deceptive

16   Business Practices Act ("ICFA").

17   149.   Section 2 of the ICFA declares unlawful "any [u]nfair methods of

18   competition and unfair or deceptive acts or practices, including but not limited to the use

19   or employment of any deception, suppression, or omission of such material fact . . . in the

20   conduct of any trade or commerce . . . whether any person has in fact been misled,

21   deceived, or damaged thereby."

22   150.   Defendants' actions alleged herein violated ICFA.

23   151.   Defendants committed multiple deceptive acts or practices, described above,

24   regarding the labeling and representations of the Products.

25   152.   Defendants intended that Plaintiffs and the Class rely on that deception.

26   153.   Plaintiffs and the Class actually did rely on that deception.

27   154.   Defendants' conduct was in the course of trade or commerce.

28   155.   Plaintiffs and the Class suffered damages as result of those violations.

19

156. Defendants violated the ICFA by engaging in unfair and/or deceptive practices, including, but not limited to, the misrepresentation, concealment, suppression, or omission of material facts, while participating in trade or commerce with the knowledge and/or intent that the State of Illinois and Illinois citizens and others would rely on their deceptive conduct.

157. In so doing, Defendants acted with reckless disregard meriting an award of punitive damages.

158. Defendants intended that Plaintiffs and each of the other members of the Class would rely upon their deceptive conduct, and a reasonable consumer would in fact be misled by Defendants' deceptive conduct.

159. Had Defendants disclosed the true nature of its Products, Plaintiffs and the Class would not have purchased the Products or would have been paid substantially less for the Products.

160. As a result of Defendants' employment of unfair and deceptive acts or business practices, Plaintiffs and the Class sustained damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION:

### Violation of the Consumers Legal Remedies Act ("CLRA")

Cal. Civ. Code §§ 1750, *et seq*. (on behalf of the California Sub-Class)

161. Plaintiffs reallege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

162. The CLRA prohibits any unfair, deceptive and unlawful practices, and unconscionable commercial practices in connection with the sale of any goods or services to consumers.

163. Plaintiffs and the California Sub-Class are "consumers" as defined by Cal. Civ. Code §1761(d).

164. The Products are "goods" as defined by Cal. Civ. Code §1761.

165. Defendants' failure to label the Products in accord with federal and state

20

labeling regulations, omitting the required information that the Products contain artificial flavoring, was an unfair, deceptive, unlawful and unconscionable commercial practice.

166. Defendants' conduct violates the Consumer Legal Remedies Act.

167. As a result of Defendants' violations, Plaintiffs and the Class suffered ascertainable losses in the form of the price premiums they paid for the unlawfully labeled and marketed Products, which they would not have paid had Defendants labeled the Products in accordance with federal and California law, and in the form of the reduced value of the Products purchased compared to the Products as labeled, advertised, and warranted.

168. On or about November 10, 2021, Plaintiffs sent a notice letter to Defendants which complies with California Civil Code § 1782 (a). Plaintiffs sent Defendants, individually and on behalf of the proposed Class, a letter via Certified Mail, demanding that Defendants rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations, and giving notice to all affected customers of their intent to do so.

169. If Defendants do not comply with the notice letter within thirty (30) days, Plaintiffs will amend this complaint accordingly. Until such time, this Complaint seeks only injunctive relief and not damages under § 1770 and § 1782.

### **THIRD CAUSE OF ACTION**:

**Violation of the Unfair Competition Law ("UCL"), Unlawful Prong**

Cal. Bus. & Prof. Code §§ 17200, *et seq.* (on behalf of the California Sub-Class)

170. Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein.

171. The UCL prohibits any "unlawful," "unfair" or "fraudulent" business practice. Section 17200 specifically prohibits any "unlawful . . . business act or practice."

172. The UCL recognizes violations of other federal and state laws and statutes and considers those violations also to constitute violations of California law when the violations occur in California.

173.  Defendants' practices as described herein were at all times during the Class Period and continue to be unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

174.  Among other violations, Defendants' conduct in unlawfully distributing the Products in commerce in California violated U.S. FDA packaging and labeling regulations.

175.  The Products' front labels fail to disclose that the Products contain synthetic artificial flavoring in violation of 21 CFR § 101.22 and California's Sherman Law and are therefore misbranded.

176.  The Products contain dl-malic acid.

177.  The dl-malic acid is an artificial flavoring material, and is included in the Products to create, simulate, and reinforce the Products' characterizing fruit and berry flavors.

178.  The dl-malic acid in the Products is not derived from any natural material as defined in 21 CFR § 101.22 and is therefore by law an artificial flavor.

179.  Defendants failed to inform consumers of the presence of the artificial flavor in the Products, on either the front or back-label as required by law, and distributed the Products in interstate commerce and in California.

180.  Defendants' practices are therefore unlawful as defined in Section 17200, *et seq.*, of the California Civil Code.

181.  Pursuant to California Business & Professions Code §17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to return the full amount of money improperly collected to all those who purchased the Products.

## FOURTH CAUSE OF ACTION:

### Violations of the Unfair Competition Law ("UCL"), Unfair Prong

Cal. Bus. & Prof. Code §§ 17200, *et seq.* (on behalf of the California Sub-Class)

182.  Plaintiffs reallege and incorporate by reference each and every allegation

22

contained elsewhere in this Complaint as if fully set forth herein.

183. Section 17200 of the California Business & Professions Code ("Unfair Competition Law" or "UCL") prohibits any "unfair . . . business act or practice." Defendants' practices violate the Unfair Competition Law "unfair" prong as well as well as the "unlawful" prong

184. The Defendants' practices as described herein are "unfair" within the meaning of the California Unfair Competition Law because the conduct is unethical and injurious to California residents and the utility of the conduct to Defendants does not outweigh the gravity of the harm to consumers.

185. Defendants' distribution of misbranded Products in violation of federal and state law may have some utility to Defendants in that it allowed Defendants to sell the Products to consumers who otherwise would not purchase an artificially-flavored food product at the retail price or at all if it were labeled correctly, and to realize higher profit margins than if the Products were formulated or labeled lawfully. But this utility is small and is far outweighed by the gravity of the harm Defendants inflicted upon California consumers.

186. Defendants' conduct also injures competing food product manufacturers, distributors, and sellers who do not engage in the same unlawful, unfair, and unethical behavior.

187. Moreover, Defendants' practices violate public policy expressed by specific constitutional, statutory, or regulatory provisions, including the Sherman Law, the False Advertising Law, and the FDA regulations cited herein.

188. Plaintiffs' and the California Sub-Class members' purchases of the Products took place in California.

189. Defendants labeled the Products in violation of federal regulations and California law requiring truth in labeling.

190. Defendants consciously failed to disclose material facts to Plaintiffs and the California Sub-Class in Defendants' advertising and marketing of the Products.

191.  Defendants' conduct is unconscionable because in addition to an egregious breach of consumer trust, Defendants willfully violated 21 C.F.R. § 101.22(c), which requires all foods containing artificial flavoring to include a "statement of artificial flavoring . . . likely to be read by the ordinary person under customary conditions of purchase and use of such food."

192.  Defendants' conduct is "unconscionable" because it violates, *inter alia*, 21 C.F.R. § 101.22, which requires all food products distributed in commerce in the U.S. for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

193.  Defendants intended that Plaintiffs and the Sub-Class rely on Defendants' acts or omissions so that Plaintiffs and the other Sub-Class members would purchase the Products.

194.  Had Defendants disclosed all material information regarding the Products in their advertising and marketing, Plaintiffs and the Sub-Class would not have purchased the Products or would have paid less for the Products.

195.  Plaintiffs and the California Sub-Class suffered injury in fact and lost money or property as a result of Defendants' deceptive advertising:  they were denied the benefit of the bargain when they purchased the Products based on Defendants' violation of the applicable laws and regulations, and purchased the Products rather than competitors' products which are lawfully labeled, and are either less expensive or contain no artificial flavoring.

196.  Plaintiffs and the Sub-Class suffered an ascertainable loss of money. Defendants' acts, omissions and practices detailed herein proximately caused Plaintiffs and other members of the Sub-Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the Products they otherwise would not have, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees and costs of suit.

197.  Section 17200 also prohibits any "unfair, deceptive, untrue or misleading

24

advertising." For the reasons set forth above, Defendants engaged in unfair, deceptive, untrue and misleading advertising in violation of California Business & Professions Code § 17200.

198.   Pursuant to California Business & Professions Code §17203, Plaintiffs seek an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to return the full amount of money improperly collected from Plaintiffs and the California Sub-Class.

## FIFTH CAUSE OF ACTION:

### Violations of California's False Advertising Law ("FAL")

Cal. Bus. & Prof. Code §§ 17500, *et seq*. (on behalf of the California Sub-class)

199.   Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein.

200.   Defendants distributed, in California and in interstate commerce, Products that unlawfully fail to disclose artificial flavoring on their packaging as required by federal food labeling regulations.

201.   The Products' labeling and advertising in California falsely represent the Products as if they were solely naturally flavored.

202.   Under California's False Advertising Law, Business and Professions Code §17500 *et seq*,

"It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . . any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ." Cal. Bus. & Prof. Code §17500.

203.    The labeling and advertising statements on the Products that Defendants distribute and communicate to consumers conceal the fact that the Products contain a synthetic artificial flavor and Defendants, at a minimum by the exercise of reasonable care, should have known that the labeling was false and misleading.

204.    Defendants profited from the false advertising displayed on the Products' labels.

205.    Defendants' conduct violates California's False Advertising Law.

206.    Plaintiffs, the Class, and the California Sub-Class are therefore entitled to the return of money improperly collected from all those who were exposed to the above-described false advertising and who purchased the Products when they otherwise would not have or who paid a price premium for the falsely advertised Products.

## SIXTH CAUSE OF ACTION:

**Pennsylvania Unfair Trade Practices and Consumer Protection Law**

**73 Pa. Stat. § 201 *et seq***

207.    Plaintiffs reallege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein.

208.    Defendants' conduct violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law (the "UTPCPL").

209.    §201-3 of the UTPCPL declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ."

210.    The UTPCPL provides for private consumer actions.  Under §201-9.2:  (a) Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or person[al], as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or

proper. The court may award to plaintiffs, in addition to other relief provided in this section, costs and reasonable attorney fees.

211.    Plaintiffs and members of the Class are  "persons" within the meaning of the UTPCPL.

212.    Plaintiffs and the Class purchased the Products primarily for personal, family or household purposes.

213.    Defendants conduct "trade" and "commerce" within the meaning of the UTPCPL by advertising, offering for sale, distributing, and selling the Products.

214.    Defendants deceptively represented that the Products had ingredients, benefits, or qualities that they did not have because they contained undisclosed artificial flavoring.

215.    Defendants deceptively represented that the Products contained natural flavors when in fact they contained artificial flavoring.

216.    Defendants unlawfully engaged in deceptive conduct which created a likelihood of confusion or misunderstanding on the part of Plaintiffs and the Class regarding the qualities, grade, ingredients, characteristics, and benefits of the Products.

217.    Defendants made misrepresentations that had the tendency or capacity to mislead Plaintiffs and the Class regarding the Products.

218.    Defendants employed unfair methods of competition when misrepresenting that its products contained only natural flavors.

219.    Plaintiffs and the Class justifiably relied, to their financial detriment, on Defendants' unfair and deceptive business practices when they purchased the Products.

220.    Plaintiffs  and the Class reasonably relied on Defendants' unfair and deceptive business practices because they reasonably believed Defendants had specialized skill, training, and experience regarding what constitutes natural and artificial flavors in the Products.

221.    Defendants were in a significantly better position than Plaintiffs and the Class to determine if Defendants' representations might be deceptive.

222. Defendants willfully used methods, acts, or practices declared unlawful by the UTPCPL.

223. Plaintiffs and the Class suffered ascertainable loss of money as the result of Defendants employing methods, acts, and practices declared unlawful by the UTPCPL because they would not have bought or would have paid less money for the Products but for Defendants' unlawful deceptive acts.

## SEVENTH CAUSE OF ACTION:

### Breach of Express Warranties

Cal. Comm. Code § 2313 & similar state laws

(on behalf of the California Sub-Class and all states with substantially similar laws)

224. Plaintiffs reallege and incorporate by reference the allegations found elsewhere in the Complaint as if set forth in full herein.

225. The Products' front labels misleadingly claim, by operation of California law and similar laws of other states, that the Products are flavored only with the listed characterizing flavors.

226. The Products' front labels fail to disclose the use of artificial flavoring "immediately and conspicuously preced[ing] or follow[ing]" the names of the characterizing flavors, as required by law. *See* 21 C.F.R. 101.22(i)(3).

227. Defendants' failure to disclose the use of artificial flavoring on the Products' front labels, by operation of law, informs consumers that the Products do not contain artificial flavors.

228. The Products' front labels falsely warrant by operation of law that the Products are flavored only with the natural flavors of the listed fruits and berries.

229. Defendants' affirmations of fact, promises, and warranties that the Products contained only natural flavors became part of the basis of the bargain between the parties and thus constituted express warranties.

230. The Products did not conform to Defendants' affirmations of fact, promises,

and warranties because they contain artificial flavors.

231. Defendants breached their express warranties that the Products contained only natural flavors.

232. Defendants sold the goods to Plaintiffs, the California Sub-Class, and other U.S. consumers who bought the goods from Defendants.

233. As a result, Plaintiffs, the California Sub-Class, and other U.S. consumers did not receive goods as warranted by Defendants.

234. Within a reasonable amount of time after Plaintiffs discovered that the Products contained synthetic flavoring ingredients, Plaintiffs notified Defendants of breach of warranties.

235. As a proximate result of this breach of express warranties, Defendants damaged Plaintiffs, the California Sub-Class, and other U.S. consumers in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION:

### Breach of Implied Warranties

Cal. Comm. Code § 2314 & similar state laws

(on behalf of the California Sub-Class and all states with substantially similar laws)

236. Plaintiffs reallege and incorporate all of the allegations elsewhere in the complaint as if set forth in full herein.

237. Defendants' label representations also create implied warranties that the Products are suitable for a particular purpose, specifically as beverage products containing no artificial flavors. Defendants breached this warranty as well.

238. Because the Products do not contain an "artificially flavored" disclosure as required by law, the Products' front labels misleadingly imply that the Products are not flavored with artificial flavoring ingredients and are flavored solely with the natural ingredients comprising the characterizing flavors.

239. As alleged in detail above, at the time of purchase Defendants had reason to know that Plaintiffs as well as all members of the California Sub-Class and other U.S.

29

consumers intended to use the Products as products that did not contain artificial flavoring.

240. This became part of the basis of the bargain between the parties.

241. Based on that implied warranty, Defendants sold the goods to Plaintiffs and other Class members who bought the goods from Defendants.

242. At the time of purchase, Defendants knew or had reason to know that Plaintiffs, the California Sub-Class members, and other U.S. consumers were relying on Defendants' skill and judgment to select or furnish products that were suitable for this particular purpose, and Plaintiffs justifiably relied on Defendants' skill, judgment, and adherence to good faith and fair dealing practices.

243. The Products were not suitable for this purpose.

244. Plaintiffs, the California Sub-Class, and other U.S. consumers purchased the Products reasonably believing they had the qualities Plaintiffs sought, based on the deceptive advertising and labeling, but the Products were actually unsatisfactory to Plaintiffs for the reasons described herein.

245. In addition, Defendants breached the implied warranty of merchantability. because the Products were not merchantable in California, as they were not of the same quality as other products in the category generally acceptable in the trade.

246. The Products would not pass without objection in the trade when packaged with their existing labels because the Products were misbranded and illegal to sell in California. *See* Cal. Comm. Code 2314(2)(a).

247. Defendants breached the implied warranty of merchantability.

248. The Products also were not acceptable commercially and breached their implied warranty because they were not adequately packaged and labeled as required. Cal. Comm. Code 2314(2)(e).

249. The Products also were not acceptable commercially and breached their implied warranty because they did not conform to the promises or affirmations of fact made on the containers or labels, Cal. Comm. Code 2314(2)(f), and other grounds as set forth in Commercial Code section 2314(2).

250. By offering the Products for sale and distributing the Products in California, Defendants also warranted that the Products were not misbranded and were legal to sell in California.

251. Because Defendants misbranded the Products in several regards and were therefore illegal to sell or offer for sale in California, Defendants breached this warranty as well.

252. As a result of this breach, Plaintiffs, the California Sub-Class and other U.S. consumers did not receive goods as impliedly warranted by Defendants.

253. Defendants' conduct violated similar state warranty laws in states other than California.

254. Within a reasonable amount of time after the Plaintiffs discovered that the Products contained synthetic ingredients, Plaintiffs notified Defendants of such breach.

255. As a proximate result of Defendants' breach of warranty, Plaintiffs and other California and other states' consumers have been damaged in an amount to be determined at trial.

256. As a result, Plaintiffs, the California Sub-Class, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

## NINTH CAUSE OF ACTION:

### Negligent Misrepresentation

Cal. Civ. Code §§ 1709-1710 and the common law of all states

(on behalf of the Nationwide Class and the California Sub-Class)

257. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

258. Defendants had a duty to disclose to Plaintiffs, the California Sub-Class, and other U.S. consumers its use of artificial flavoring ingredients on the front label of the Products pursuant to California and federal law.

259. Defendants were in a superior position regarding expertise and information

31

that reliance by Plaintiffs, the California Sub-Class, and other U.S. consumers was justified. Defendants possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

260. During the Class Period, Defendants negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the Products, including the use and presence of artificial flavoring ingredients.

261. The label representations negligently misrepresented the Products as if they were exclusively naturally flavored.

262. Defendants were negligent in distributing Products labeled as if they were exclusively naturally flavored and in failing to identify the Products as artificially flavored.

263. Defendants represented the Products to Plaintiffs, the California Sub-Class, and other U.S. consumers as solely naturally flavored as if this were true.

264. Defendants intended for Plaintiffs, the California Sub-Class, and other U.S. consumers to rely on this representation.

265. Defendants' representations were not true.

266. Defendants' Products are not exclusively naturally flavored but are instead artificially flavored as described herein.

267. Defendants failed to secure a reasonable basis for believing that the Products were naturally flavored at any time relevant to this action.

268. Defendants were careless in ascertaining the truth of its representations in that Defendants knew or should have known that Plaintiffs, the California Sub-Class, and other U.S. consumers would not have discovered the use of artificial flavoring ingredients in the Products.

269. Plaintiffs, the California Sub-Class, and other U.S. consumers reasonably relied on this representation. They were unaware of Defendants' unlawful misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

CLASS ACTION COMPLAINT

270. Defendants thereby harmed Plaintiffs, the California Sub-Class, and other U.S. consumers as alleged herein. Plaintiffs, the California Sub-Class, and other U.S. consumers would not have purchased the Products, or would have paid less for the Products, if the true facts had been known.

271. The reliance of Plaintiffs, the California Sub-Class, and other U.S. consumers on Defendants' misrepresentations was a substantial factor in that harm.

272. As a result, Plaintiffs, the California Sub-Class, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

## **TENTH CAUSE OF ACTION:**

### **Fraud by Omission**

Cal Civ. Code §§ 1709-1710 and the common law of all states

(on behalf of the Nationwide Class and the California Sub-Class)

273. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth in full herein.

274. Plaintiffs bring this claim for fraud by omission pursuant to California Civil Code §§ 1709-1710 *et seq.* and the common law of all states. The elements of fraud are substantially similar from state to state, thus making nationwide class certification appropriate.

275. Defendants omitted material facts, in whole or in part, with the intent to induce Plaintiffs and the members of the Class, the California Sub-Class, and other U.S. consumers to purchase the Products and pay premium prices for the Products. Specifically, Defendants actively concealed the truth about the Products by failing to provide the legally required "artificially flavored" disclosure on the front label of the Products as is required by California and federal law.

276. Plaintiffs, the Class, the California Sub-Class, and other U.S. consumers were unaware of this omitted material fact and would not have purchased the Products, or would have paid less for the Products, if they had known of the omitted fact.

277.   Plaintiffs, the Class, the California Sub-Class, and other U.S. consumers suffered injuries that were proximately caused by Defendants' omissions of material facts.

278.   Defendants' omissions were a substantial factor in causing the harm suffered by Plaintiffs, the Class, the California Sub-Class, and other U.S. consumers as they would not have purchased the Products at all, or would have paid less for the Products, if all material facts were properly disclosed.

279.   As a result, Plaintiffs, the Class, the California Sub-Class, and other U.S. consumers are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated in California, Illinois, Pennsylvania, and all others similarly situated in the U.S., pray for judgment against Kraft Heinz and Kraft Heinz Foods as follows:

A.   An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiffs and their undersigned counsel to represent the Class and the  California Sub-Class, and requiring Defendants to bear the cost of class notice;

B.   An order declaring that the conduct complained of herein violates the Illinois ICFA;

C.   An order declaring that the conduct complained of herein violates the California CLRA;

D.   An order declaring that the conduct complained of herein violates the California UCL;

E.   An order declaring that the conduct complained of herein violates the California FAL;

F.   An order declaring that the conduct complained of herein violates the Pennsylvania UTCPL and an order awarding "actual damages sustained or statutory damages of $100 per class member, whichever is greater, or, in the

34

1    court's discretion, three times the actual damages sustained totaling no less

2    than $100 per class member."

3  G.    An order declaring that the conduct complained of herein violates

4    corresponding consumer protection laws in states other than California,

5    including Illinois and Pennsylvania state law;

6  H.    An order declaring that the conduct complained of herein breached express

7    warranties, implied warranties, or both;

8  I.    An order requiring Defendants to disgorge any benefits received from

9    Plaintiffs and the Class and any unjust enrichment realized as a result of the

10    improper and misleading labeling, advertising, and marketing of the

11    Products;

12  J.    An order requiring Defendants to pay restitution and damages to Plaintiffs

13    and Class members so that they may be restored any money which was

14    acquired by means of any unfair, deceptive, unconscionable or negligent acts;

15  K.    An award of punitive damages in an amount to be proven at trial;

16  L.    An order enjoining Defendants' deceptive and unfair practices;

17  M.    An order requiring Defendants to conduct corrective advertising;

18  N.    An award of pre-judgment and post-judgment interest;

19  O.    An award of attorney fees and costs; and

20  P.    Such other and further relief as this Court may deem just, equitable, or proper.

## IX.  JURY DEMAND

Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a jury trial for claims sounding in equity.

November 29, 2021      Respectfully Submitted,

/s/ *David Elliot*
David Elliot

**THE ELLIOT LAW FIRM**
DAVID ELLIOT (270381)

35

2028 3rd Avenue
San Diego, CA  92101
Tel: (619) 468-4865

CLASS ACTION COMPLAINT