# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LISA BOSS, LINDA GUNNETT, and PEGGY TATUM, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>THE KRAFT HEINZ COMPANY and KRAFT HEINZ FOODS COMPANY (LLC),<br><br>      Defendants. | Case No. 1:21-cv-06380<br><br>The Honorable Charles R. Norgle Sr. |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

**JENNER & BLOCK LLP**

Dean N. Panos
dpanos@jenner.com
353 North Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
Fax: (312) 527-0484

Alexander M. Smith
asmith@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-5100
Fax: (213) 239-5199

Attorneys for Defendants
The Kraft Heinz Company and
Kraft Heinz Foods Company (LLC)

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

     I.     FDA Regulations Govern the Disclosure of "Natural" and "Artificial" Flavors. ................................................................... 2

     II.    Plaintiffs' Allegations Against Kraft Heinz .................................... 3

ARGUMENT ................................................................................................................ 4

     I.     Plaintiffs Have Not Plausibly Alleged That Malic Acid Acts as an "Artificial Flavor." ........................................................... 4

          A.    Plaintiffs have not plausibly alleged that the malic acid in MiO is a "flavor." ....................................................... 4

          B.    Plaintiffs have not plausibly alleged that the malic acid in MiO is "artificial." .................................................... 7

     II.    Plaintiffs Have Not Plausibly Alleged That Kraft Heinz's Labeling Is Misleading. ................................................................. 9

     III.   Plaintiffs' Tag-Along Claims Fail for Independent Reasons........................ 12

     IV.   Plaintiffs Are Not Entitled to Seek Injunctive Relief. ................................... 14

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................7, 8, 10, 14

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
  945 F.3d 1225 (9th Cir. 2019) ......................................................................9

*Benson v. Fannie May Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ......................................................................11

*Benson v. Fannie May Confections Brands, Inc.*,
  No. 17-3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018) ....................14

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
  761 F.3d 732 (7th Cir. 2014) ......................................................................15

*Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*,
  321 F.R.D. 193 (E.D. Pa. 2017)....................................................................12

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005) ........................................................14

*Figy v. Frito-Lay N. Am., Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) ........................................................8

*Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*,
  373 F. Supp. 3d 567 (W.D. Pa. 2019)........................................................13

*Freeman v. MAM USA Corp.*,
  528 F. Supp. 3d 849 (N.D. Ill. 2021) ........................................................15

*Goodman v. PPG Indus., Inc.*,
  849 A.2d 1239 (Pa. Super. Ct. 2004)........................................................13

*Hu v. Herr Foods, Inc.*,
  251 F. Supp. 3d 813 (E.D. Pa. 2017) ..........................................................6

*Ivie v. Kraft Foods Global, Inc.*,
  961 F. Supp. 2d 1033 (N.D. Cal. 2013) ......................................................6

*Landau v. Viridian Energy PA LLC*,
  223 F. Supp. 3d 401 (E.D. Pa. 2016) ..........................................................9

*Manley v. Hain Celestial Grp., Inc.*,
    417 F. Supp. 3d 1114 (N.D. Ill. 2019) .............................................................9, 13

*McNair v. Synapse Grp, Inc.*,
    672 F.3d 213 (3d Cir. 2012)...........................................................................15

*Mednick v. Precor, Inc.*,
    No. 14-3624, 2016 WL 5390955 (N.D. Ill. Sept. 27, 2016) ....................................15

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
    435 N.E.2d 443 (Ill. 1982) ............................................................................13

*Ollivier v. Alden*,
    634 N.E.2d 418 (Ill. App. Ct. 1994) .................................................................14

*Payton v. County of Kane*,
    308 F.3d 673 (7th Cir. 2002) .........................................................................15

*Phillips v. DePaul Univ.*,
    19 N.E.3d 1019 (Ill. Ct. App. 2014) ...................................................................9

*Red v. Gen. Mills, Inc.*,
    No. 15-2232, 2015 WL 9484398 (C.D. Cal. Dec. 29, 2015)...................................13

*Robie v. Trader Joe's Co.*,
    No. 20-7355, 2021 WL 2548960 (N.D. Cal. June 14, 2021)....................................8

*In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*,
    155 F. Supp. 3d 772 (N.D. Ill. 2016) ................................................................13

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) ........................................................................12

*Sonneveldt v. Mazda Motor of Am.*,
    No. 19-1298, 2021 WL 62502 (C.D. Cal. Jan. 4, 2021) ........................................12

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
    903 F. Supp. 2d 942 (S.D. Cal. 2012)..............................................................13

*Spector v. Mondelēz Int'l, Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016) .............................................................9, 12

*Stemm v. Tootsie Roll Indus., Inc.*,
    374 F. Supp. 3d 734 (N.D. Ill. 2019) .................................................................9

*Tarzian v. Kraft Heinz Foods Co.*,
    No. 18-7148, 2019 WL 5064732 (N.D. Ill. Oct. 10, 2019) ......................................8

*Tiffin v. Great Atl. & Pac. Tea Co.*,
  156 N.E.2d 249 (Ill. App. 1959) ............................................................13

*Victor v. R.C. Bigelow, Inc.*,
  No. 13-2976, 2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ...................................11

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ........................................................4, 5, 14

*Willard v. Tropicana Mfg. Co.*,
  No. 20-1501, 2021 WL 6197079 (N.D. Ill. Dec. 30, 2021)..............................10, 11

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012) ...............................................................9

*Wynn v. Topco Assocs., LLC*,
  No. 19-11104, 2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ...................................11

*Yamauchi v. Cotterman*,
  84 F. Supp. 3d 993 (N.D. Cal. 2015) .........................................................12

**Statutes**

21 U.S.C. § 337(a) .............................................................................11

**Other Authorities**

21 C.F.R. § 101.22 ....................................................................... *passim*

21 C.F.R. § 170.3 ...........................................................................3, 5, 7

21 C.F.R. § 184.1069 .......................................................................5, 7

*Food Labeling: Declaration of Ingredients*, 56 Fed. Reg. 28592 (June 21, 1991) ...................3, 6

## INTRODUCTION

This lawsuit challenges Kraft Heinz's purported failure to disclose that MiO, a flavored liquid beverage concentrate sold in shelf-stable containers, contains "artificial flavors." Notably, Plaintiffs do not—and cannot—point to any representation that MiO is free of artificial flavors. Instead, Plaintiffs assert that the presence of malic acid (which Plaintiffs baselessly characterize as an "artificial flavor") requires Kraft Heinz to disclose the presence of artificial flavors and that the omission of this supposed fact from a mandated regulatory disclosure on the product label is misleading. Plaintiffs' lawsuit is entirely implausible.

At the outset, Plaintiffs' factual allegations do not establish that the malic acid in MiO acts as a "flavor" or that it is "artificial." Although Plaintiffs allege that malic acid acts as a flavor because it provides the "characterizing tart taste" associated with MiO's many fruit flavors, it is utterly implausible that malic acid simultaneously imparts the characterizing berry, fruit, and tea flavors in the eighteen varieties of MiO Plaintiffs challenge here. Plaintiffs' allegations actually establish that malic acid acts as a "flavor enhancer" or a "pH balancer," which are not "flavors" and are therefore not subject to the FDA's flavor regulations. Moreover, Plaintiffs' speculation that Kraft Heinz uses "artificial" dl-malic acid is bereft of any factual substantiation. Many courts have dismissed similar lawsuits where the plaintiffs failed to articulate any basis for their belief that the offending ingredients were "artificial," and this Court should do the same here.

Even if Plaintiffs *had* plausibly alleged that the malic acid in MiO acts as a "flavor" and that it is "artificial," their lawsuit fails because Kraft Heinz makes no claim that MiO is free of "artificial flavors." Absent any such representation, no reasonable consumer would expect a pocket-sized, sugar-free, shelf-stable liquid beverage concentrate to be completely free of artificial ingredients. While Plaintiffs will likely argue that the FDA's food labeling regulations require the

disclosure of artificial flavors on the front label (a contention with which Kraft Heinz strongly disagrees), the absence of such a disclosure does not render the labeling false or misleading. At most, it establishes a technical violation of an FDA regulation, which is insufficient to support a consumer fraud claim absent a plausible allegation of deception.

Setting aside these core flaws, Plaintiffs' ancillary claims for breach of express and implied warranty, negligent misrepresentation, and fraud by omission all suffer from independent, fatal defects that require their dismissal. And regardless of whether Plaintiffs can seek damages on behalf of putative class members, they cannot seek injunctive relief: now that they are aware that MiO allegedly contains artificial flavors, there is no further risk that they will be "deceived." Plaintiffs' lawsuit is flawed beyond repair, and this Court should dismiss it with prejudice.

## BACKGROUND

## I.     FDA Regulations Govern the Disclosure of "Natural" and "Artificial" Flavors.

The FDA has issued a regulation, 21 C.F.R. § 101.22, that governs the use and labeling of flavoring agents in food products. If a product label includes a representation about the product's "characterizing flavor" (*e.g.*, strawberry), and the characterizing flavor comes from "natural flavor" derived from the characterizing food ingredient, the regulation directs the manufacturer to state that the product is "strawberry flavored" or "natural strawberry flavored." 21 C.F.R. § 101.22(i)(1)(i). If the product contains both a characterizing flavor derived from the characterizing ingredient and "other natural flavor which simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to add the nomenclature "with other natural flavor." *Id.* § 101.22(i)(1)(iii). But if the food "contains any *artificial* flavor which simulates, resembles or reinforces the characterizing flavor," the regulation directs the manufacturer to describe the product as "artificially flavored." *Id.* § 101.22(i)(2) (emphasis added).

Critically, these regulations apply only to "flavoring agents and adjuvants," which are "[s]ubstances added to impart or help impart a taste or aroma in food." *Id.* § 170.3(o)(12). The regulations do not apply to "flavor enhancers," which are "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." *Id.* § 170.3(o)(11). Because "flavor enhancers are not flavorings," the FDA has made clear that they need not be disclosed on the front label but instead "must be declared in the ingredient list by their common or usual names." FDA, *Food Labeling: Declaration of Ingredients*, 56 Fed. Reg. 28592, 28598 (June 21, 1991) (noting that the "FDA's regulations describing the various functional effects of human food ingredients differentiate between 'flavoring agents and adjuvants' and 'flavor enhancers'").

## II.    Plaintiffs' Allegations Against Kraft Heinz.

Kraft Heinz manufactures MiO, a liquid water enhancer. *See* Compl. ¶¶ 47, 50, 51 (images of labeling). MiO comes in a variety of flavors, such as Acai Berry Storm, Berry Blast, Strawberry Pineapple Smash, and Tropical Fusion. *See id.* ¶ 39 n.2 (list of MiO flavors). In contrast to fresh fruit juices, which come in relatively bulky containers and often require refrigeration, MiO is a shelf-stable, concentrated product that comes in a pocket-sized plastic bottle that consumers can squeeze into plain water to enhance its taste.

Each MiO product derives its signature taste from natural flavors, which it discloses (along with all other ingredients) in the ingredient line on the back of each package. *See id.* ¶ 52. Consistent with the FDA regulations, Kraft Heinz accurately states in a mandatory regulatory disclosure on the front of each label that MiO contains "Natural Flavor with Other Natural Flavor." *See id.* ¶¶ 47, 50, 51. Each MiO product also contains other ingredients that serve various functional purposes, such as sweeteners and colorings. *See id.* ¶ 52.

3

The MiO products at issue also contain malic acid, which balances the product's acidity and which Kraft Heinz discloses in the ingredient line of each product. According to Plaintiffs, however, the malic acid in each MiO product does not simply increase the product's acidity. Instead, it allegedly "provides the characterizing tart flavor of the fruits and berries listed on the Products' front labels" and is "therefore an artificial flavor under federal and state law." *Id.* ¶¶ 71–72. Based on this theory of deception, Plaintiffs assert statutory consumer fraud claims under California, Illinois, and Pennsylvania law (*see id.* ¶¶ 147–223), as well as common-law claims for breach of express warranty, breach of implied warranty, negligent misrepresentation, and fraud by omission (*see id.* ¶¶ 224–79). Plaintiffs purport to assert these claims on behalf of a putative nationwide class of MiO purchasers, as well as a putative California subclass. *See id.* ¶¶ 128–31.

## ARGUMENT

### I. Plaintiffs Have Not Plausibly Alleged That Malic Acid Acts as an "Artificial Flavor."

Plaintiffs' lawsuit is premised on the allegation that the malic acid in Kraft Heinz's MiO products constitutes an "artificial flavor." That requires Plaintiffs to establish not only that the malic acid is "artificial," but also that it acts as a "flavor." Plaintiffs' allegations establish neither.

#### A. Plaintiffs have not plausibly alleged that the malic acid in MiO is a "flavor."

To establish that malic acid acts as an artificial "flavor," Plaintiffs must plausibly allege that it "simulates, resembles or reinforces the *characterizing flavor*" of the product. 21 C.F.R. § 101.22(i)(1) (emphasis added); *see also id.* § 101.22(i) (noting that the "primary recognizable flavor" of the product, as depicted through words or vignettes on the labeling, is its "characterizing flavor"). It is not enough that malic acid may incidentally affect MiO's taste or "amplify whatever characterizing flavor it has from another source." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013). Rather, to establish that malic acid acts as an "artificial flavor,"

4

Plaintiffs must plausibly allege that it "give[s] the product an *original taste*." *Id.* (emphasis added).

Plaintiffs have not done so. Far from establishing that Kraft Heinz uses malic acid as a flavoring agent, Plaintiffs' allegations actually suggest that Kraft Heinz uses malic acid as a "flavor enhancer"—*i.e.*, a "substance[] added to supplement, enhance, or modify the original taste and/or aroma of the food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11). As Plaintiffs admit, each MiO product has a "characterizing fruit or berry or 'tea' flavor." Compl. ¶ 39. But malic acid does not taste like these fruits, berries, or tea. It is certainly not a magic ingredient that simultaneously tastes like "Cherry Blackberry," "Orange Vanilla," "Sweet Tea," and the fifteen other varieties of MiO at issue in this lawsuit. *See id.* ¶ 39 n.2. Plaintiffs attempt to sidestep this argument by alleging that malic acid "provides the *characterizing* tart flavor of the fruits and berries listed on the Products' front labels." *Id.* ¶ 71 (emphasis added). But that cannot be true, as "tart" is not the "primary recognizable flavor" of any MiO variety (such as "Cherry Blackberry") and therefore cannot be its "characterizing flavor." 21 C.F.R. § 101.22(i).

Even if Plaintiffs were correct that malic acid increases the tartness of the MiO products, that establishes only that it "enhances" and "modifies" the *other* characteristic fruit or tea flavors in each variety of the MiO products—which makes it a textbook example of a "flavor enhancer." 21 C.F.R. § 170.3(o)(11). In fact, the FDA has explicitly recognized that malic acid can be used for this purpose.[1] *See* 21 C.F.R. § 184.1069(c). And in drawing a distinction between "flavors" and "flavor enhancers," the FDA has made clear that flavor enhancers are not subject to the FDA's regulations governing the disclosure of natural and artificial flavors. *See* 56 Fed. Reg. at 28598.

---

[1] The FDA has also recognized that malic acid can be used as a "pH control agent." 21 C.F.R. § 184.1069(c), *see also id.* § 170.3(o)(23) (defining a "pH control agent" as a "substance[] added to change or maintain acidity or basicity"). Indeed, the USDA has expressly recognized that "[t]he main use of synthetic malic acid is pH adjustment." RJN Ex. 1. And that use is entirely consistent with Plaintiffs' allegation that malic acid lends a "tart flavor" to MiO. Compl. ¶ 71.

Many courts have dismissed similar lawsuits where the plaintiff's allegations failed to establish that the challenged ingredient served the function the plaintiff claimed it did. For example, in *Ivie v. Kraft Foods Global, Inc.*, the plaintiff alleged that Kraft Foods falsely claimed that its Crystal Light products contained "natural flavors," even though they also contained potassium citrate and sodium citrate, which the plaintiff characterized as "artificial flavors." 961 F. Supp. 2d 1033, 1041 (N.D. Cal. 2013). The court dismissed this claim. "While these substances may be artificial *ingredients*," the court reasoned, the plaintiffs' allegations did not establish that "these ingredients are *flavors*, artificial or otherwise." *Id.* In so holding, the court emphasized that a "bare, conclusory assertion that these two ingredients 'simulate[], resemble[], or reinforce[] the characterizing [lemon] flavor . . . is insufficient to state a claim that these labels violate 21 C.F.R. § 101.22(i)(2)." *Id.* at 1042.

Similarly, in *Hu v. Herr Foods, Inc.*, the plaintiff alleged that the statement "No Preservatives Added" was false because the products contained citric acid, which the plaintiff characterized as a preservative. 251 F. Supp. 3d 813, 816–17 (E.D. Pa. 2017). The court dismissed this lawsuit, holding that the plaintiff had not plausibly alleged that citric acid actually acted as a preservative in the product. *See id.* at 821–22. In reaching this conclusion, the court rejected the plaintiff's argument that reasonable consumers would still view citric acid as a preservative "regardless of its functionality—*i.e.*, even if [it] does not actually preserve that particular product." *Id.* at 821. And while the plaintiff asked the court to "draw a chain of inferences that . . . warrant the conclusion that Defendant decided to use citric acid in an attempt to preserve its Products," the court found that these "arguments and speculations are not supported by well-pleaded factual allegations" and that it "need not accept them as true." *Id.* at 822–23.

Here, as in *Ivie* and *Hu*, Plaintiffs have not plausibly alleged that the malic acid in MiO

acts as a *flavor*, as opposed to a flavor enhancer or a pH balancer.  Even if Plaintiffs' allegations were sufficient to establish that malic acid *could* act as a "flavor" (which they are not), the "mere possibility" that it functions as a flavor is not enough to state a plausible claim that MiO contains "artificial flavors."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Absent any plausible allegation that malic acid provides a "characteristic taste or aroma of its own" and does not merely "enhance" or "modify" other flavors, 21 C.F.R. § 170.3(o)(11), this Court should dismiss Plaintiffs' lawsuit.

**B.**     **Plaintiffs have not plausibly alleged that the malic acid in MiO is "artificial."**

Plaintiffs' lawsuit also fails because they have not plausibly alleged that the malic acid in MiO is "artificial."  The FDA has made clear—and Plaintiffs concede—that malic acid "occurs naturally in various foods."  21 C.F.R. § 184.1069(a); *see also* Compl. ¶ 64 ("Food-ingredient suppliers offer manufacturers both the natural and artificial versions of the flavoring ingredient malic acid.").  Plaintiffs attempt to plead around this fact by alleging that Kraft Heinz uses "artificial" dl-malic acid instead of naturally occurring malic acid.  *See* Compl. ¶¶ 64–65.  But even if there were a scientifically sound distinction between these two forms of malic acid, Plaintiffs allege no facts that substantiate their conjecture that the malic acid in MiO is "artificial" dl-malic acid.  Instead, they simply assert that it is.[2]  But repeating the same allegation over and over does not make it plausible.  Plaintiffs' unsupported speculation that the malic acid in MiO is "artificial" or "derived from petrochemicals" does not suffice to "nudge" their allegations "across

---

[2] *See, e.g.*, *id.* ¶ 37 ("Artificial dl-malic acid, a synthetic petrochemical, is in fact the primary flavoring agent in the Products."); *id.* ¶ 53 (The 'malic acid' shown on the Products' ingredient lists is the artificial flavoring ingredient dl-malic acid."); *id.* ¶ 58 ("The malic acid Defendants added to the Products is a synthetic manufactured petrochemical called dl-malic acid."); *id.* ¶ 59 ("The dl-malic acid added to the Products is a petrochemical that is synthesized from benzene or butane.  It does not occur in nature."); *id.* ¶ 70 ("The dl-malic acid that Defendants put in these products is derived from petrochemicals, not from 'a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material . . . .'").

the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (citation omitted).

*Tarzian v. Kraft Heinz Foods Co.* is directly on point. There, the plaintiffs alleged that Kraft Heinz mislabeled its Capri-Sun beverages as having "no artificial preservatives" because they contained allegedly "artificial" citric acid. No. 18-7148, 2019 WL 5064732, at *1 (N.D. Ill. Oct. 10, 2019). Although the plaintiffs acknowledged that citric acid could be naturally "produced by extraction from fresh fruits," they speculated that Kraft Heinz used the artificial version because it was more "economically viable" to do so. *Id.* Judge Kocoras dismissed the lawsuit. Even though the plaintiffs had alleged a "common industry practice" of using artificial "fermented citric acid," Judge Kocoras concluded that these allegations were "insufficient to link fermented citric acid to that used in Capri Sun," as the plaintiffs had "failed to draw a connection between the common industry practice and the *actual practice* used by Kraft." *Id.* at *4 (emphasis added).

Here, as in *Tarzian*, Plaintiffs have not provided *any* factual support for their conjecture that the malic acid in MiO is artificial dl-malic acid. They do not allege that they tested Kraft Heinz's MiO products, that they commissioned a chemical analysis of those products, or that they are aware of the suppliers from whom Kraft Heinz procured its malic acid. Indeed, they have not even attempted to allege that the use of dl-malic acid—as opposed to its naturally occurring counterpart—is a "common industry practice" or that it is more "economically viable" than naturally occurring malic acid. *See id.* at *1, *4. Their idle guesswork about the source of the malic acid in Kraft Heinz's MiO products is woefully insufficient to allege that it is "artificial."[3]

---

[3] *See, e.g.*, *Robie v. Trader Joe's Co.*, No. 20-7355, 2021 WL 2548960, at *5 (N.D. Cal. June 14, 2021) ("The conclusory allegations that the flavoring is artificial are insufficient to state a claim."); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1090 (N.D. Cal. 2014) (dismissing false advertising claim where the plaintiff "provide[d] no detail whatsoever about how or why the offending ingredients are unnatural").

## II.     **Plaintiffs Have Not Plausibly Alleged That Kraft Heinz's Labeling Is Misleading.**

While Plaintiffs allege that the regulatory flavor disclosure on MiO "give[s] consumers the false impression that they are buying a premium all-natural product" (Compl. ¶ 20), they do not—and cannot—identify any statement on the labeling that MiO is "all natural" or free of artificial flavors.  Instead, Plaintiffs' claim is premised on Kraft Heinz's alleged "omission of the fact that the Products contained artificial flavorings."  *Id.* ¶ 115.  But Plaintiffs have not plausibly alleged that the omission of an "artificial flavor" disclosure is likely to deceive a reasonable consumer—as is necessary to prevail on their California, Illinois, and Pennsylvania consumer fraud claims.[4]

"[W]hile an omission of material fact can satisfy the requirements for pleading fraud under the ICFA, Illinois courts are always watchful that the [ICFA] not be used to transform nondeceptive and nonfraudulent omissions into actionable affirmations."  *Spector v. Mondelēz Int'l, Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (citation and internal quotation marks omitted); *accord Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) ("California courts have generally rejected a broad obligation to disclose . . . .").  To that end, "an omission is not actionable as fraud if it gives rise to 'an incomplete' as opposed to an affirmatively 'false impression.'"  *Spector*, 178 F. Supp. 3d at 672 (quoting *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1030 (Ill. Ct. App. 2014)); *see also Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1119 (N.D. Ill. 2019) (noting that a labeling claim is not "actionable under the ICFA" simply because it is "insufficiently specific").  That principle is fatal to Plaintiffs' case.

---

[4] *See, e.g.*, *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. 2019) ("Courts apply a 'reasonable consumer' standard in evaluating the likelihood of deception."); *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (stating that "claims under the California consumer-protection statutes are governed by the 'reasonable consumer' test," under which Plaintiff must "show that members of the public are *likely* to be deceived.") (emphasis added) (citations omitted); *Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016) (applying reasonable consumer test to consumer fraud claim under Pennsylvania law).

There can be no dispute that Kraft Heinz does not claim MiO is an "all-natural" product or free of artificial ingredients. Moreover, common sense—which this Court must apply in ruling on a motion to dismiss (*see Iqbal*, 556 U.S. at 679)—makes clear that a reasonable consumer would not assume that a shelf-stable liquid beverage concentrate that comes in flavors like "Arctic Grape" and "Tropical Burst" is free of artificial ingredients. Absent any *affirmative* representation that MiO is an "all-natural" product or free from artificial ingredients, the omission of an "artificial flavor" disclosure would not mislead a reasonable consumer into believing that MiO is "natural."

Judge Valderrama's recent decision in *Willard v. Tropicana Manufacturing Co.*, No. 20-1501, 2021 WL 6197079 (N.D. Ill. Dec. 30, 2021), is instructive. There, the plaintiffs—represented by Plaintiffs' counsel here—alleged that ten Tropicana juice products were mislabeled because they contained malic acid but failed to disclose that they contained artificial flavor. *Id.* at *1. While Judge Valderrama found that plaintiffs had plausibly alleged that the presence of malic acid rendered the phrase "100% Juice Apple Juice" misleading, he dismissed the plaintiffs' claim that it rendered the phrase "Trop 50 Farmstand Apple Juice" misleading. *See id.* at *12. In so holding, he emphasized that the product's name, along with the statement "50% less sugar & calories than apple juice," "undermines Plaintiffs' claims that the name of the Product and the pictures of apples could mislead consumers into believing that the Product only contains natural ingredients." *Id.* And Judge Valderrama similarly dismissed the plaintiffs' claim with respect to eight other juices, finding that the plaintiffs' allegation "that each Product contains malic acid and fails to disclose that fact on the front labels" was insufficient to establish that "a reasonable consumer would be deceived by the labels." *Id.*

Here too, the MiO labeling is devoid of any representations that even *arguably* suggest those products are "natural" or free of artificial ingredients. Instead, they include flavor names—

such as "Acai Berry Storm" and "Tropical Fusion"—that make clear that the products are not "natural." Just as in *Willard*, Plaintiffs' allegation that the products contain malic acid but fail to disclose that they are "artificially flavored" does not establish consumer deception.

Plaintiffs attempt to plead around this argument by alleging that Kraft Heinz's "label representations convey to the consumer by operation of federal and state law that the Products are made exclusively from and flavored only with natural fruits and berries or fruit and berry flavors." Compl. ¶ 40. But this argument fails, as Plaintiffs do not allege—let alone with any degree of plausibility—"that reasonable consumers are aware of these complex regulations, much less that they incorporate the regulations into their day-to-day marketplace expectations." *Wynn v. Topco Assocs., LLC*, No. 19-11104, 2021 WL 168541, at *3 (S.D.N.Y. Jan. 19, 2021); *see also, e.g.*, *Victor v. R.C. Bigelow, Inc.*, No. 13-2976, 2014 WL 1028881, at *17 (N.D. Cal. Mar. 14, 2014) ("[T]he ultimate question . . . is what a reasonable consumer expects, which may have absolutely no relation to FDA regulations."). Absent any plausible allegation that consumers are aware of 21 C.F.R. § 101.22 or that it guides their expectations about the presence of artificial flavors, Plaintiffs have not plausibly alleged that the omission of an "artificial flavor" disclosure is misleading.

Finally, even if Plaintiffs were correct that Kraft Heinz's alleged failure to disclose the presence of "artificial flavors" violated 21 C.F.R. § 101.22 (which they are not), the Federal Food, Drug & Cosmetic Act ("FDCA") does not permit private plaintiffs to police alleged violations of FDA regulations. *See* 21 U.S.C. § 337(a); *see also, e.g.*, *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645–48 (7th Cir. 2019) (affirming dismissal of ICFA claim and noting that "[t]he FDCA does not create a private right of action"). It is accordingly irrelevant whether Kraft Heinz's alleged failure to disclose the presence of "artificial flavor" in MiO might violate 21 C.F.R. § 101.22, as Congress has deliberately chosen not to allow private plaintiffs to enforce that

11

regulation. Absent any plausible allegation that Kraft Heinz's labeling is deceptive, Plaintiffs cannot state a consumer fraud claim premised on a purported violation of 21 C.F.R. § 101.22.[5]

### III.     Plaintiffs' Tag-Along Claims Fail for Independent Reasons.

In addition to their statutory consumer fraud claims, Plaintiffs also assert claims for breach of express and implied warranty, negligent misrepresentation, and fraud by omission. *See* Compl. ¶¶ 224–79. But if Plaintiffs have not plausibly alleged that Kraft Heinz's labeling is misleading, they cannot plausibly claim that Kraft Heinz breached any warranty or that it misrepresented (or omitted) any material fact. And in any event, these claims also fail for several independent reasons.

Plaintiffs' claims for breach of express warranty and negligent misrepresentation fail as a matter of law because these claims require an affirmative representation, rather than an alleged omission.[6] Although Plaintiffs claim that Kraft Heinz's "front labels misleadingly claim, by operation of California law and similar laws of other states, that the Products are flavored only with the listed characterizing flavors" (Compl. ¶ 225), they do not actually identify any affirmative representation that MiO is free of artificial flavors. Instead, they allege that the labeling "fail[s] to disclose the use of artificial flavoring . . . as required by law." *Id.* ¶ 226. The admitted absence of

---

[5] Plaintiffs will likely argue that an alleged violation of law is sufficient to state a claim under the "unlawful" prong of California's UCL, even absent a plausible allegation of deception. But the California Court of Appeal has made clear that alleged violations of FDA food labeling regulations do not suffice to state a claim under the UCL's "unlawful" prong absent a plausible allegation that the defendant's regulatory violation was both deceptive and material. *See Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1144-45 (2020).

[6] *See, e.g.*, *Spector*, 178 F. Supp. 3d at 674 (noting that a breach of express warranty claim requires "an affirmation of fact or promise"); *Ctr. City Periodontists, P.C. v. Dentsply Int'l, Inc.*, 321 F.R.D. 193, 213 n.5 (E.D. Pa. 2017) ("[A]n express warranty cannot arise from something that is left unsaid; that is the textbook definition of an *implied* warranty."); *Sonneveldt v. Mazda Motor of Am.*, No. 19-1298, 2021 WL 62502, at *12 (C.D. Cal. Jan. 4, 2021) (holding that an omission could not "serve as the basis for Plaintiffs' breach of express warranty claims"); *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1018 (N.D. Cal. 2015) ("[A]n omission alone cannot form the basis for a claim of negligent misrepresentation.").

any *affirmative* misrepresentation that MiO is free of artificial flavors is fatal to these two claims.

Plaintiffs' claim for negligent misrepresentation is independently barred by the economic loss rule, which "generally prohibits recovery in tort for solely economic loss."[7] Plaintiffs do not, and cannot, allege that they suffered any personal injury or property damage; instead, they allege that they "would not have purchased the Products, or would have paid less for the Products, if the true facts had been known." Compl. ¶ 270. Even if Plaintiffs were correct that Kraft Heinz failed to disclose that MiO contains artificial flavors (which they are not), they cannot recover in tort for that purported injury. *See Moorman*, 435 N.E.2d at 450 ("The remedy for economic loss, loss relating to a purchaser's disappointed expectations . . . lies in contract."); *Manley*, 417 F. Supp. 3d at 1120-21 (applying *Moorman* to dismiss consumer's negligent misrepresentation claim).

Nor have Plaintiffs stated a claim for breach of implied warranty. The implied warranties of merchantability and fitness for a particular purpose are "imposed by law to ensure a *minimum standard* of product quality and fitness."[8] Here, Plaintiffs do not allege that MiO is contaminated, unsafe to consume, or otherwise unfit for its ordinary purpose of making plain water taste better.

---

[7] *In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 824 (N.D. Ill. 2016) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982)); *accord In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 961 (S.D. Cal. 2012) ("[A] plaintiff's tort recovery of economic damages is barred unless such damages are accompanied by some form of physical harm (*i.e.*, personal injury or property damage.") (citation omitted); *Fleming Steel Co. v. Jacobs Eng'g Grp., Inc.*, 373 F. Supp. 3d 567, 595 (W.D. Pa. 2019) ("In Pennsylvania, the economic loss doctrine provides that no cause of action exists for negligence that results solely in economic damages unaccompanied by physical or property damage.") (citation and internal quotation marks omitted).

[8] *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1245 (Pa. Super. Ct. 2004) (emphasis added); *see also Tiffin v. Great Atl. & Pac. Tea Co.*, 156 N.E.2d 249, 255 (Ill. App. 1959) (noting that implied warranties "prohibit[] the sale of food products which are unfit for human consumption"); *Red v. Gen. Mills, Inc.*, No. 15-2232, 2015 WL 9484398, at *6 (C.D. Cal. Dec. 29, 2015) (noting that the implied warranty of merchantability "provides the consumer with only a *minimum* level of protection against product defects" and "does not guarantee a perfect product").

Instead, they simply allege that the "Products' front labels misleadingly imply that the Products are not flavored with artificial flavoring ingredients." Compl. ¶ 238. Even if that allegation were true (and it is not), it does not give rise to a claim for breach of implied warranty. *See, e.g.*, *Viggiano*, 944 F. Supp. 2d at 896 (dismissing beach of implied warranty claim where the plaintiff did "not allege any facts suggesting that the soda is not merchantable or fit for use as a diet soft drink," such as by alleging "that it was contaminated or contained foreign objects").

Finally, Plaintiffs' fraud-by-omission claim fails because they have not plausibly alleged any facts suggesting that Kraft Heinz acted with fraudulent intent, which is an "essential element of common-law fraud." *Ollivier v. Alden*, 634 N.E.2d 418, 424 (Ill. App. Ct. 1994). Plaintiffs allege that Kraft Heinz "intended to give consumers the false impression that they are buying a premium all-natural product instead of a product that is artificially flavored" so that they would pay "premium prices." Compl. ¶¶ 20, 275. But this Court need not "credit [Plaintiffs'] conclusory statements" regarding intent "without reference to their factual context." *Iqbal*, 556 U.S. at 686. And consistent with that admonition, courts in Illinois have made clear that a defendant's alleged desire to increase profits and sales is not sufficient to establish fraudulent intent, as these are "basic motivations not only of fraud, but of running a successful corporation." *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005). Because Plaintiffs provide no factual support for their conclusory allegations of intent, the Court should dismiss their fraud-by-omission claim.

## IV.  Plaintiffs Are Not Entitled to Seek Injunctive Relief.

Even if their claims were sufficiently plausible to survive dismissal (which they are not), Plaintiffs lack standing to seek injunctive relief. As a general rule, "a plaintiff who is aware of a defendant's deceptive practices is not likely to be harmed by them in the future, and therefore lacks standing to pursue injunctive relief." *Benson v. Fannie May Confections Brands, Inc.*, No. 17-

3519, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014)); *see also Mednick v. Precor, Inc.*, No. 14-3624, 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016) (collecting cases). Here, Plaintiffs expressly allege that, had they known of Kraft Heinz's purported deception, they "would not have purchased the Products or would not have paid as much" for them. *See, e.g.*, Compl. ¶ 121. But since Plaintiffs are "now aware of [Kraft Heinz's] sales practices, [they are] not likely to be harmed by the practices in the future." *Camasta*, 761 F.3d at 741.[9]

It is irrelevant that Plaintiffs allege they "intend to, desire to, and will purchase the Products again when they can do so with the assurance that the Products' labels, which warrant that the Products are solely naturally flavored, are lawful and consistent with the Products' ingredients." Compl. ¶ 124. This does not establish that Plaintiffs face a risk of future injury; to the contrary, it establishes that they will *not* purchase MiO products so long as the ingredients and labeling are unchanged, so there is no risk of future harm. In other words, the possibility that Plaintiffs and other class members "may, one day, become . . . customers once more" is not sufficient to establish standing. *McNair v. Synapse Grp, Inc.*, 672 F.3d 213, 224–25 (3d Cir. 2012). This Court should accordingly dismiss Plaintiffs' claims to the extent they seek injunctive relief.

## CONCLUSION

This Court should dismiss Plaintiffs' lawsuit with prejudice and without leave to amend.

---

[9] The fact that Plaintiffs purport to represent a class of consumers does not change this result. The Seventh Circuit has made clear that "[s]tanding cannot be acquired through the back door of a class action" and that a named plaintiff cannot "piggy-back on the injuries of the unnamed class members." *Payton v. County of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citation omitted). Thus, even if other class members may not know that MiO contains allegedly contains artificial flavors, the "risk of future harm to proposed class members" is not enough to confer Plaintiffs with Article III standing. *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 857 (N.D. Ill. 2021); *see also Mednick*, 2016 WL 5390955, at *9 (noting that "the named Plaintiffs 'cannot rely on the prospect that *other* consumers may be deceived' to boost their own standing") (citation omitted).

Dated:  March 22, 2022

Respectfully submitted,

By: /s/ Dean N. Panos
      Dean N. Panos (ARDC No. 6203600)
      Jenner & Block LLP
      353 N. Clark Street
      Chicago, IL 60654-3456
      Telephone:  (312) 923-2765
      Facsimile:  (312) 527-0484
      dpanos@jenner.com

      Attorneys for Defendant
      The Kraft Heinz Company and
      Kraft Heinz Foods Company (LLC)

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing document was filed on March 22, 2022 with the Clerk of the Court by using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

Dated:  March 22, 2022                       By: _____/s/ Dean N. Panos_____
                                               Dean N. Panos